**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Court of Appeals

The State, Respondent,

v.

Royal Daniel Williams, III, Appellant.

Appellate Case No. 2020-000049

———————

Appeal From Florence County
Thomas A. Russo, Circuit Court Judge

———————

Unpublished Opinion No. 2024-UP-128
Heard April 2, 2024 – Filed April 17, 2024

———————

**AFFIRMED**

———————

Elizabeth Anne Franklin-Best and Jillian Marie Lesley, both of Elizabeth Franklin-Best, P.C., of Columbia, for Appellant.

Attorney General Alan McCrory Wilson and Assistant Attorney General William Joseph Maye, both of Columbia, and Solicitor Edgar Lewis Clements, III, of Florence, all for Respondent.

———————

**PER CURIAM:** Royal D. Williams, III appeals his conviction of murder for which he was sentenced to life in prison without parole. Williams argues that the circuit

court erred by (1) denying his motion for a directed verdict, (2) denying his motion to suppress cell phone evidence obtained by law enforcement three years after the warrant for the evidence was issued, (3) finding probable cause to permit the State to obtain a buccal swab from Williams, (4) granting the State a continuance to remedy an evidentiary issue, and (5) not dismissing the case based on an alleged violation of Williams's right to a speedy trial. We affirm pursuant to Rule 220(b), SCACR.

1. As to whether the circuit court erred in denying Williams's motion for a directed verdict, we conclude that the circuit court did not err because there was substantial circumstantial evidence such that the court was required to submit the case to the jury. *See State v. Butler*, 407 S.C. 376, 381, 755 S.E.2d 457, 460 (2014) ("On appeal from the denial of a directed verdict, [appellate courts] view[] the evidence and all reasonable inferences in the light most favorable to the State."); *id.* ("If there is any direct evidence or any substantial circumstantial evidence reasonably tending to prove the guilt of the accused, the [appellate court] must find the case was properly submitted to the jury." (quoting *State v. Weston*, 367 S.C. 279, 292–93, 625 S.E.2d 641, 648 (2006))); *see also State v. Bennett*, 415 S.C. 232, 236–37, 781 S.E.2d 352, 354 (2016) ("[T]he trial court . . . must submit the case to the jury if there is 'any substantial evidence which reasonably tends to prove the guilt of the accused, or from which his guilt may be fairly and logically deduced.'" (quoting *State v. Littlejohn*, 228 S.C. 324, 329, 89 S.E.2d 924, 926 (1955))); *Id.* at 236, 781 S.E.2d at 354 ("[In denying a directed verdict motion], a court is not required to find that the evidence infers guilt to the exclusion of any other reasonable hypothesis."). The circumstantial evidence, viewed in the light most favorable to the State, includes the following: (1) DNA evidence connecting Williams to the scene of the crime; (2) cell phone data evidence connecting Williams to the scene of the crime and establishing Williams and the victim communicated extensively leading up to the time immediately prior to the victim's murder, after which Williams suddenly did not attempt to communicate with the victim further; (3) the testimony of two witnesses, a taxi driver and a taxi passenger, tending to establish that Williams was picked up by a taxi from the scene of the crime near the victim's approximate time of death; (4) a composite sketch created by a SLED artist working with the taxi passenger; (5) video footage[1] and the testimony of the taxi company dispatcher corroborating the taxi driver's testimony about when and where she picked up Williams; (6) the testimony from the taxi driver that Williams had a partially-open

---

[1] The video footage also did not show any vehicle other than the taxi arriving at or departing from the crime scene between the victim's return home and the taxi's arrival.

black backpack visibly containing travel-sized toiletries with him when he entered the taxi; and (7) a black backpack that was later recovered by police from the home of Williams's former coworker,[2] who identified the backpack as belonging to Williams. Altogether, this constitutes substantial circumstantial evidence such that the circuit court was required to submit the case to the jury for evaluation.

2. As to whether the circuit court erred in failing to suppress cell phone data that the State obtained three years after police obtained a warrant for it, we conclude that the circuit did not err because the warrant was properly executed within ten days after it was issued. S.C. Code Ann. § 17-13-140 (2014) ("Any warrant issued hereunder shall be executed and return made only within ten days after it is dated."). In 2016, police obtained a warrant for Williams's cell phone data from Sprint and executed the warrant within ten days; however, Sprint inadvertently turned over data on a cell phone tower other than the one described in the warrant. In 2019, police noticed the mistake, did not obtain a new warrant, and asked Sprint to correct the error and furnish the correct data, which it did. We find that the warrant was timely executed within the ten-day window of validity established by statute.

Additionally, we note that even if the ten-day requirement was violated, Williams did not meet his burden of establishing that he was prejudiced by the violation. *See State v. Weaver*, 374 S.C. 313, 323, 649 S.E.2d 479, 483–84 (2007) ("[F]ailure to observe the ten-day requirement for the execution and return of a warrant, a ministerial requirement, does not necessarily void the warrant. The warrant will be invalidated only if the defendant can show he was prejudiced by the failure." (citation omitted)); *see also State v. Mollison*, 319 S.C. 41, 47, 459 S.E.2d 88, 92 (Ct. App. 1995) ("Some deficiencies in search warrants are so substantial that they require exclusion of the evidence. However, failure to comply with inconsequential ministerial requirements of the statute does not require suppression in the absence of prejudice to the defendant."); *id.* (refusing to suppress evidence seized beyond the ten-day window pursuant to a warrant because the appellants did not establish that they were prejudiced by the belated execution). The correct cell phone data, which police received in 2019, was exactly the same as what they would have acquired in 2016 if Sprint had properly complied with the warrant and furnished the correct data.

---

[2] The former coworker's home was also a mere block away from where the taxi driver testified to dropping off Williams on the day of the victim's murder, and the same place from which the taxi driver picked up Williams again days later.

3. As to whether the circuit court erred in granting the State's motion to obtain a DNA sample from Williams via a buccal swab for the purposes of comparing his DNA to the DNA collected from the crime scene, we conclude the court properly found probable cause and permitted the swab. *See State v. Register*, 308 S.C. 534, 537–38, 419 S.E.2d 771, 773 (1992) ("[For warrants authorizing bodily intrusions,] the State must initially show that there is probable cause to believe a crime has been committed, and probable cause to believe that it was committed by a particular suspect."); *see also State v. Baccus*, 367 S.C. 41, 50, 625 S.E.2d 216, 221 (2006) (stating that appellate courts are charged with "ensur[ing] the [circuit court] had a substantial basis upon which to conclude that probable cause existed"); *State v. Spears*, 393 S.C. 466, 483, 713 S.E.2d 324, 333 (Ct. App. 2011) ("The appellate court should give great deference to a [circuit court's] determination of probable cause." (quoting *State v. Dunbar*, 361 S.C. 240, 253, 603 S.E.2d 615, 622 (Ct. App. 2004))). During a pre-trial hearing, the State called two police detectives to testify in camera so that the circuit court could determine whether probable cause existed. Collectively, their testimony established the following: (1) according to the victim's coworkers, the victim was afraid of someone who was at her house and had gone through her phone; (2) the victim's phone contained addresses for Williams, Williams's brother, and Williams's grandmother; (3) the taxi driver and passenger gave statements to police and subsequently worked with a sketch artist to develop a composite sketch; and (4) the composite sketch was shown to Williams's grandmother, who positively identified the sketch as her grandson, Williams. Altogether, and affording the circuit court the great deference required, we conclude the circuit court's finding of probable cause rested upon a substantial basis.

4. As to issues four and five, we conclude the trial court did not err in granting a continuance to the State on the eve of trial and denying Williams's motion to dismiss for a violation of his right to a speedy trial because the majority of the delay cannot be ascribed to the State and because Williams did not assert his right until the eve of trial. *See State v. Kennedy*, 339 S.C. 243, 249, 528 S.E.2d 700, 703 (Ct. App. 2000) (per curiam) ("The Sixth and Fourteenth Amendments to the United States Constitution and Article 1, Section 14 of the South Carolina Constitution provide that a criminal defendant is entitled to a speedy trial."); *see also State v. Brazell*, 325 S.C. 65, 75, 480 S.E.2d 64, 70 (1997) ("Whether or not a person accused of a crime has been denied his constitutional right to a speedy trial is a question to be answered in the light of the circumstances of each case." (quoting *State v. Dukes*, 256 S.C. 218, 222, 182 S.E.2d 286, 288 (1971))); *Kennedy*, 339 S.C. at 249, 528 S.E.2d at 703–04 (listing the factors for a speedy trial violation as "(1) the length of delay, (2) the reason the government uses to explain the delay, (3) when and how the defendant asserted his speedy trial right, and (4) the prejudice to the defendant"); *Barker v.*

*Wingo*, 407 U.S. 514, 532 (1972) ("[F]ailure to assert the right [to a speedy trial] will make it difficult for a defendant to prove that he was denied a speedy trial."); *State v. Barnes*, 431 S.C. 66, 85, 846 S.E.2d 389, 399 (Ct. App. 2020) ("Delays caused by the defendant should weigh against him." (quoting *State v. Reaves*, 414 S.C. 118, 130, 777 S.E.2d 213, 219 (2015))), *aff'd as modified*, 436 S.C. 202, 871 S.E.2d 421 (2022) (per curiam).  Williams was in police custody for three years and six months awaiting trial.  However, the pre-trial arguments put before the circuit court established: (1) Williams retained new counsel four months before the speedy trial motion was heard, and counsel needed that time to prepare; (2) Williams did not assert his right to a speedy trial at all until the pre-trial hearings held a few months before his trial; (3) each time the State attempted to move the trial forward, Williams's then-current counsel indicated that he was not ready; and (4) several of the State's witnesses would be unavailable barring the grant of a continuance because the unexpected length of the pre-trial hearings made it such that the trial would stretch into a second week.  Combining the fact that Williams did not assert his speedy trial right sooner with the fact that the majority of the delay was the result of Williams's attorneys needing time to prepare, we find that the circuit court's granting of a continuance to the State did not violate Williams's right to a speedy trial.

For the foregoing reasons, Williams's conviction is

**AFFIRMED.**

**GEATHERS, HEWITT, and VINSON, JJ., concur.**