# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Wadette Cothran and Chris Cothran, Petitioners,

v.

State Farm Mutual Automobile Insurance Company and Robert Tucker, Defendants,

of which State Farm Mutual Automobile Insurance Company is the Respondent.

Appellate Case No. 2018-000235

––––––––––––

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

––––––––––––

Appeal from Spartanburg County
L. Casey Manning, Circuit Court Judge

––––––––––––

Opinion No. 27914
Heard May 29, 2019 – Filed August 7, 2019

––––––––––––

## REVERSED

––––––––––––

Charles Logan Rollins II, Hawkins Law Firm, of Spartanburg, for Petitioners.

Robert William Whelan, Charles R. Norris, of Charleston, and C. Mitchell Brown, of Columbia, all of Nelson Mullins Riley & Scarborough, LLP, for Respondent.

––––––––––––

**JUSTICE FEW:** Section 38-77-144 of the South Carolina Code (2015) provides that no-fault personal injury protection (PIP) insurance coverage "is not subject to a setoff." This appeal requires us to consider whether section 38-77-144 prohibits an automobile insurance carrier from reducing its obligation to pay PIP benefits to its insured by the amount of workers' compensation benefits the insured received for medical expenses. We hold that it does.

## I.      Facts and Procedural History

Wadette Cothran incurred approximately $40,000 in medical expenses from injuries she received in an automobile accident. Her employer's workers' compensation carrier paid all of her medical expenses. She was also covered by her automobile insurance policy issued to her and her husband Chris by State Farm Mutual Automobile Insurance Company. The State Farm policy provided PIP coverage with a limit of $5,000. However, State Farm refused to pay her any PIP benefits for medical expenses based on a "Workers' Compensation Coordination" provision in the policy. The "Coordination" provision states,

> Any Personal Injury Protection Coverage provided by this policy applies as excess over any benefits recovered under any workers' compensation law or any other similar law.

The Cothrans filed this lawsuit against State Farm alleging breach of contract and bad faith refusal to pay insurance benefits.

The circuit court granted summary judgment to the Cothrans on the breach of contract claim, finding the "Coordination" provision violated section 38-77-144. The court of appeals reversed. *Cothran v. State Farm Mut. Auto. Ins. Co.*, 421 S.C. 562, 808 S.E.2d 824 (Ct. App. 2017). We granted the Cothrans' petition for a writ of certiorari. We reverse the court of appeals, and reinstate the summary judgment.

## II.      Section 38-77-144

We begin with the text of section 38-77-144.

> There is no personal injury protection (PIP) coverage mandated under the automobile insurance laws of this State. Any reference to personal injury protection in Title 38 or 56 or elsewhere is deleted. If an insurer sells no-fault insurance coverage which provides personal injury

protection, medical payment coverage, or economic loss coverage, the coverage shall not be assigned or subrogated and is not subject to a setoff.

§ 38-77-144.

We focus on the language "the [PIP] coverage . . . is not subject to a setoff." The term "setoff" is not defined in our Insurance code. Therefore, we apply the term's "usual and customary meaning." *Perry v. Bullock*, 409 S.C. 137, 140-41, 761 S.E.2d 251, 253 (2014). Merriam-Webster defines "setoff" as "something that is set off against another thing" and as "the discharge of a debt by setting against it a distinct claim in favor of the debtor." *Setoff*, WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (1988). The term is defined in BLACK'S LAW DICTIONARY as, "A defendant's counterdemand against the plaintiff, arising out of a transaction independent of the plaintiff's claim," and, "A debtor's right to reduce the amount of a debt by any sum the creditor owes the debtor." *Setoff*, BLACK'S LAW DICTIONARY (11th ed. 2019).

However, the term "setoff" is also commonly used to describe any reduction in the amount a defendant or insurance company would otherwise be obligated to pay on a claim, when the right to the reduction arises as a result of a payment from a third party. Our courts have used the term for this meaning in numerous cases. In *Smith v. Widener*, 397 S.C. 468, 724 S.E.2d 188 (Ct. App. 2012), for example, the plaintiff filed suit to recover funds she claimed should have been paid to her, but were wrongly paid to other parties. 397 S.C. at 471, 724 S.E.2d at 190. Before trial, the defendant who made the contested payment settled. At the conclusion of trial, the jury found the defendants who received the payment had done so wrongfully, and they must pay the funds to the plaintiff. *Id.* These defendants argued the judgment to be entered against them must be reduced by the amount the plaintiff received before trial in settlement. *Id.* The parties, the trial court, and the court of appeals framed the question as whether the non-settling defendants were entitled to a "setoff" because of this third-party payment. The court of appeals held that "before entering judgment on a jury verdict, the court must reduce the amount of the verdict to account for any funds previously paid by a settling defendant, so long as the settlement funds were paid to compensate the same plaintiff on a claim for the same injury." 397 S.C. at 471-72, 724 S.E.2d at 190. The court described this as a "setoff" that arises by operation of law. 397 S.C. at 472, 724 S.E.2d at 190 (citing *Ellis v. Oliver*, 335 S.C. 106, 111, 515 S.E.2d 268, 271 (Ct. App. 1999)). *See also Rutland v. S.C. Dep't of Transp.*, 400 S.C. 209, 217, 734 S.E.2d 142, 146 (2012) (finding the trial court properly reduced a jury verdict against one defendant by the amount paid

in settlement by different defendants, and calling that a "set-off"); *Huck v. Oakland Wings, LLC*, 422 S.C. 430, 436, 813 S.E.2d 288, 291 (Ct. App. 2018) (stating, "A nonsettling defendant is entitled to credit for the amount paid by another defendant who settles," and calling that a "setoff" (quoting *Welch v. Epstein*, 342 S.C. 279, 312, 536 S.E.2d 408, 425 (Ct. App. 2000))); *Ellis*, 335 S.C. at 109, 515 S.E.2d at 270 (addressing whether a defendant was entitled to a "set-off" to reduce the judgment against him by the amount a third party paid the plaintiff for his medical expenses).

A setoff, therefore, takes two primary forms. The first—not applicable here—is when person A's obligation to pay person B is reduced by the amount of B's obligation to A, regardless of whether the corresponding obligations arose from the same transaction or subject matter. *See Setoff*, BLACK'S LAW DICTIONARY. The second—which is applicable here—is when A's (State Farm's) obligation to pay B (Wadette) is reduced by the amount of C's (workers' compensation carrier's) payment to B, where A's and C's obligations to pay did arise from the same transaction or subject matter.

The Legislature obviously intended to use the term "setoff" in this second form—as we did in *Rutland*, and the court of appeals did in *Huck*, *Smith*, *Welch*, and *Ellis*—when it drafted section 38-77-144.[1] In the context of PIP coverage, we can envision no situation in which an insured's obligation back to the insurer could reduce the insurer's obligation to the insured. Rather, the only thing that could ever be set off against PIP coverage is a third-party payment, such as a payment from a tortfeasor or the workers' compensation benefits Wadette received. Because "setoff" is not a situation that could arise under the first definition, the term becomes relevant in section 38-77-144 only under the second definition.

This discussion allows us to frame the issue before us more precisely. In section 38-77-144, the Legislature intended—at least in part—to prevent an insurance company

---

[1] Counsel for State Farm attempted to argue at oral argument that under this definition of setoff—which counsel contended was overbroad and thus ambiguous—even a deductible would be a setoff. We do not agree. An insurance company's obligation to pay is provided under the terms of the policy. A setoff is a reduction in the amount of the obligation to the extent there has been a third-party payment. If there is a deductible, the insurance company was never obligated to pay the amount of the deductible. Rather, the reduction is provided under the terms of the policy. A deductible, therefore, is not a setoff.

that sells PIP coverage from reducing the amount of PIP it is obligated to pay because the insured received a third-party payment for the same expenses. If State Farm's "Coordination" provision has this effect, it is a setoff, and it violates the section.

Through its "Coordination" provision, State Farm attempts to designate the policy holder's opportunity to recover workers' compensation benefits as the policy holder's primary source of repayment for medical expenses. If the workers' compensation benefits equal the medical expenses—as occurred here—or if the difference between workers' compensation benefits received and the total medical expenses is less than the policy limit for PIP coverage, the "Coordination" provision becomes effective.[2] In the latter example, State Farm's obligation to pay PIP benefits would be reduced, but not eliminated. In the former example—as occurred here—the effect of the provision is that State Farm pays no PIP benefits. In this case, State Farm's obligation to pay PIP coverage to Wadette is reduced—eliminated, in fact—by the amount her employer's workers' compensation carrier paid her for medical expenses. In other words, the "Coordination" provision is a setoff.[3]

---

[2] The following scenarios illustrate the effect of the "Coordination" provision. Wadette incurred approximately $40,000 in medical expenses. Her PIP benefits policy limit is $5,000. If her workers' compensation benefits were less than $35,000, the "Coordination" provision would have no effect and State Farm would owe her the policy limit. If her workers' compensation benefits were $37,500, the "Coordination" provision would take effect and State Farm would owe her $2,500. In this case, her workers' compensation benefits equaled the total amount of her medical expenses, so the effect of the "Coordination" provision would be to eliminate State Farm's obligation to pay any PIP benefits.

[3] The term "setoff" is used universally to describe the reduction of PIP benefits by the amount of a third-party payment, including workers' compensation. This is explained in APPLEMAN ON INSURANCE. "More often than not, multiple sources of recovery are available to the injured insured. As long as there is no policy or statutory provision limiting or restricting multiple recovery, payments may be made under more than one policy or plan." 6 Jeffrey E. Thomas, NEW APPLEMAN ON INSURANCE LAW LIBRARY EDITION § 66.09[1] (2019). The APPLEMAN subsection goes on to explain, "Most no-fault statutes have some sort of coordination of benefits language," like the "Coordination" provision in State Farm's policy purports to be. However, subsection 66.09[1] and the next one—subsection 66.09[2][a] entitled "Statutory Setoffs -- Workers' Compensation"—make it clear that when no-fault benefits are reduced by payments from a workers' compensation carrier, it is a "setoff." Thomas, *supra* § 66.09[2][a]; *see also* 12 Steven Plitt et al., COUCH ON

State Farm attempts to avoid this straightforward analysis by relying on this Court's opinion in *State Farm Mutual Automobile Insurance Co. v. Richardson*, 313 S.C. 58, 437 S.E.2d 43 (1993), and in particular our statement "the Legislature intended the set-off prohibition[4] . . . to apply only to the tortfeasor," 313 S.C. at 61, 437 S.E.2d at 45. The court of appeals agreed with State Farm that *Richardson* is controlling. *Cothran*, 421 S.C. at 569, 808 S.E.2d at 828. We do not agree *Richardson* may be read as expansively as State Farm argues and the court of appeals held. *Richardson* involved a different policy provision and a different set of facts. If *Richardson* is to control this case, it must be because the reasoning is applicable here, not simply because the words we chose to explain our reasoning—when read out of context—might appear to restrict the effect of the statute. As we will explain, the reasoning of *Richardson* is not applicable in this case.

The question in *Richardson* was whether section 38-77-145, *see supra* note 4, invalidated a policy provision that prevented the stacking of PIP benefits from two automobile policies issued by the same insurer. 313 S.C. at 59, 437 S.E.2d at 44.[5]

---

INSURANCE § 171:67 (3d ed. 2018) ("[A] no-fault insurer may be entitled to setoff from the injured party's coverage amounts the insured has received from various other sources for the same injury."); 46A C.J.S. *Insurance* § 2236 (2018) ("Ordinarily, a no-fault insurance carrier is entitled to set off insured's workers' compensation benefits . . . where the workers' compensation benefits are intended to serve the same purpose as no-fault benefits, and required to be paid." (footnotes omitted)). The important point here is not that the law of other jurisdictions might permit—or even require—a setoff under the circumstances of this case, but that the effect the "Coordination" provision has in this case is universally called a "setoff."

[4] When originally enacted, and at the time this Court decided *Richardson*, section 38-77-144 was numbered 38-77-145. *See* Act No. 148, 1989 S.C. Acts 427, 470; S.C. Code Ann. § 38-77-145 (Supp. 1989); *Richardson*, 313 S.C. at 60, 437 S.E.2d at 45 (quoting S.C. Code Ann. § 38-77-145 (Supp. 1992)).

[5] The policy provision on which State Farm relied in *Richardson* stated,

> If two or more policies issued by us to you, your spouse,
> or your relatives provide vehicle Medical Payments
> Coverage and apply to these same bodily injuries
> sustained . . . the total limits of liability under all such

The insureds "incurred medical expenses in excess of $20,000 . . . [and] filed a claim for PIP benefits under two State Farm automobile insurance policies that each carried a $10,000 maximum." *Id.* State Farm paid the insureds $10,000 under one policy, but refused to make any PIP payment under the other policy. *Id.* We found the provision on which State Farm relied was not a "setoff." 313 S.C. at 61, 437 S.E.2d at 45.

Both policies at stake in *Richardson* were issued by State Farm, and the PIP coverages in each were identical. This is important for two reasons. The first reason is the policy provision defined the coverage State Farm sold to its insured; it was not an attempt to direct how separate coverages from different insurers interact. The provision in both State Farm policies stated that if there are two policies "issued by us to you," you may recover only the limits of one policy. On the other hand, had the two policies been issued by different insurers, the provision would not have applied. Thus, there was no setting off of one coverage against another. Rather, there was but one coverage, and that coverage was to be paid according to the terms of the State Farm policies. For this reason, we held "the disputed language in its policy comprises [sic] an anti-stacking[] clause rather than a set-off." 313 S.C. at 60, 437 S.E.2d at 44.

The second reason this is important is the coverages in the State Farm policies were identical no-fault PIP. The coverages in this case—PIP coverage and workers' compensation coverage—are not the same. PIP coverage is first-party coverage a policy holder purchases to pay medical expenses no matter who is at fault in causing the accident. *See* S.C. Code Ann. § 38-77-10(4) (1989) (repealed by Act No. 148, 1989 S.C. Acts 427, 513). "The key concept embodied in PIP no fault coverage is that an injured person needs to promptly pay expenses necessarily arising out of injuries sustained, and needs support for himself and his family during the period of recuperation." *Hamrick v. State Farm Mut. Auto. Ins. Co.*, 270 S.C. 176, 180, 241 S.E.2d 548, 549 (1978); *see also* 46A C.J.S. *Insurance* § 2184 (2018) ("No-fault statutes are intended to protect persons injured in accidents involving a motor vehicle, by assuring that such accident victims receive compensation, reparations, or financial assistance, that is *certain*, and that is provided in a *prompt and expeditious*

---

policies shall not exceed that of the policy with the highest limit of liability.

313 S.C. at 59, 437 S.E.2d at 44.

*fashion* . . . ." (emphasis added) (footnotes omitted)).[6]  State Farm's contention that it can take insurance that is by definition primary and simply label it as "excess" in an attempt to make it not primary is a stretch under any circumstances.[7]  Under section 38-77-144, it is prohibited.

Finally, we disagree with State Farm and the court of appeals that the legislative history we considered in *Richardson* supports a finding that the "Coordination" provision in this case is not a setoff.[8]  The legislative history of section 38-77-144 supports our reading of the plain language of the section that the "Coordination" provision is a setoff.

As we stated in *Richardson*, the Legislature "made sweeping reforms in automobile insurance law" in 1989.  313 S.C. at 60, 437 S.E.2d at 45.  We stated,

---

[6] Workers' compensation insurance is also no-fault.  *Nicholson v. S.C. Dep't of Soc. Servs.*, 411 S.C. 381, 389, 769 S.E.2d 1, 5 (2015).  However, it is not first-party insurance like PIP, and its availability to an employee is subject to the provisions of the Workers' Compensation Act after potentially protracted litigation in front of the workers' compensation commission.  *But see Russell v. Wal-Mart Stores, Inc.*, 426 S.C. 281, 285, 287, 826 S.E.2d 863, 865-66 (2019) (refocusing the commission on its "primary" role in avoiding "complicated and protracted litigation").

[7] State Farm contends the "Coordination" provision does not violate section 38-77-144 because it "is an excess clause, not a setoff."  According to State Farm, "An excess clause is '[a]n insurance-policy provision . . . that limits the insurer's liability to the amount exceeding other available coverage.  This clause essentially requires other insurers to pay first." (quoting *Excess clause*, BLACK'S LAW DICTIONARY (10th ed. 2014)).

[8] Ordinarily, after concluding the plain language of a statute controls, we would not consider legislative history or any other indication of legislative intent.  *See Timmons v. S.C. Tricentennial Comm'n*, 254 S.C. 378, 401, 175 S.E.2d 805, 817 (1970) ("If a statute is clear and explicit in its language, then there is no need to resort to statutory interpretation or legislative intent to determine its meaning.").  We do so in this case solely to address the error of the court of appeals in relying on our legislative history analysis in *Richardson*.  *See Cothran*, 421 S.C. at 570-71, 808 S.E.2d at 829 (stating "despite the language of section 38-77-144 appearing to prohibit any setoff of PIP benefits, our supreme court declared the legislative intent of that section was to prohibit tortfeasors from reducing their liability by the amount of PIP benefits" (citing *Richardson*, 313 S.C. at 61, 437 S.E.2d at 45)).

In section 57 of [Act 148], the Legislature repealed the tortfeasor's statutory "set-off" authorized by section 38-77-290(f). *See* 1989 S.C. Acts at 513. Concurrently, in section 34 of Act 148, the Legislature expressly provided that PIP coverage was not subject to a "set-off." *See* 1989 S.C. Acts at 470. In our view, the Legislature intended for the "set-off" prohibition in section 34 of Act 148 to refer to the statute allowing reduction of a tortfeasor's liability which was repealed in section 57 of Act 148. Accordingly, we find that the "set-off" prohibited by section 34 of Act 148, now codified in section 38-77-145, is the tortfeasor's reduction in liability formerly allowed by section 38-77-290(f).

*Id.*

Our legislative-history focus in *Richardson* was the repeal of subsection 38-77-290(f), which—prior to its repeal—required the setoff of PIP benefits in favor of a tortfeasor. *See* § 38-77-290(f) (1989) (providing PIP "benefits received or recovered . . . must be deducted from any tort recovery, settlement, or judgment for bodily injury"). The fact the Legislature repealed the provision requiring a setoff against a tortfeasor's liability, and simultaneously prohibited any setoff against PIP coverage when it enacted section 38-77-145, *see supra* note 4, was important to us in understanding whether the anti-stacking provision was invalidated by the setoff prohibition in section 38-77-144.

It was not necessary in *Richardson* for us to discuss the fact the Legislature also repealed former subsection 38-77-290(d) in 1989. Subsection 38-77-290(d) required a setoff of workers' compensation benefits received by an insured against an insurer's obligation to pay PIP benefits. *See* § 38-77-290(d) (1989) (repealed by Act No. 148, 1989 S.C. Acts at 513) ("Benefits payable [under the PIP statute[9]] must be reduced to the extent that the recipient has recovered benefits under workers' compensation laws . . . ."). Thus, former subsection 38-77-290(d) required by law precisely what State Farm seeks to obtain in this case by policy provision. The Legislature, however, repealed the subsection. If the repeal of subsection 38-77-290(f) was

---

[9] Here, former subsection 38-77-290(d) referred to former section 38-77-240 of the South Carolina Code (1989) (repealed by Act No. 148, 1989 S.C. Acts at 513), which is the section that required PIP coverage.

useful to us in *Richardson* to understand whether an anti-stacking provision violated section 38-77-144, then the repeal of subsection 38-77-290(d) is even more important to us in understanding whether State Farm's "Coordination" provision is prohibited. In other words, the fact the Legislature repealed the legal requirement that workers' compensation benefits be set off against PIP, and simultaneously provided PIP coverage "is not subject to a setoff," is forceful proof that the Legislature intended the setoff prohibition must apply to workers' compensation benefits.

## III.    Conclusion

When an insurer seeks to reduce its obligation to pay benefits based on a third party's previous payment for the same claim, it is a setoff. Because that is the precise effect of State Farm's "Coordination" provision, section 38-77-144 prohibits the provision from reducing State Farm's obligation to pay PIP benefits to the Cothrans. We reverse the court of appeals and reinstate the summary judgment in their favor.

**REVERSED.**

**BEATTY, C.J., KITTREDGE, HEARN and JAMES, JJ., concur.**